MORISHIGE et ux, *Petitioners,*

*v.*

OREGON LIQUOR CONTROL COMMISSION,
*Respondent.*

(CA 7563)

564 P2d 1359

Nels Peterson, Portland, argued the cause for petitioners. With him on the brief was Peterson, Peterson & Peterson, P.C., Portland.

Al J. Laue, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before Schwab, Chief Judge, and Richardson and Johnson, Judges.

JOHNSON, J.

Schwab, C. J., specially concurring opinion.

## JOHNSON, J.

This is an appeal from an order of the Oregon Liquor Control Commission (OLCC) denying petitioners' application for a renewal of a retail malt beverage license. Petitioners operated an establishment called the "Family Kitchen" located in Vernonia, Oregon and were issued pursuant to ORS 471.265 an unrestricted retail malt beverage license on June 16, 1975. The 1975 application was accompanied by an unqualified endorsement from the City of Vernonia.[1] Petitioners applied for renewal on March 19, 1976. Attached to petitioners' renewal application was a letter to the OLCC signed by the mayor of Vernonia stating:

"At the City Council Meeting on March 15, 1976, a motion was carried to recommend refusal for the above noted license renewal application, copy attached.

"At the Council Meeting of February 17, 1975, Mr. Morishige presented a request to the council for a beer and wine license to allow for serving these beverages 'with meals only' and his request was granted on the basis that his stated intentions would be followed. Mr. Morishige has not complied.

"*The City Council now requests that the O.L.C.C. grant Mr. Morishige a beer and wine license which specifically states that it be restricted for 'serving with meals only.'*

"Further, that the O.L.C.C. post the Family Kitchen, aka Cedarsides, that Minors Are Not Permitted to Loiter on the Premises." (Emphasis supplied.)

---

[1] The OLCC requires license applicants located within a city to accompany application with a recommendation from the city council. ORS 471.210(2) provides:

"The commission may require of every applicant for a license the recommendation in writing of the county court in the event the place of business of the applicant is outside an incorporated city, and of the city council if the place of business of the applicant is within an incorporated city. The commission may take such recommendation into consideration before granting or refusing the license. The applicant shall pay to such recommending authority a fee of $10 for each application for a license permitting the sale of alcoholic liquor for consumption on the premises set forth in the application, and the sum of $5 for all other applications for licenses."

[ 653 ]

What followed is a masterpiece of bureaucratic reasoning. On March 24 OLCC notified petitioners by letter that because their present license was unrestricted and the city had recommended renewal subject to a restriction for service of beer and wine with meals, the commission proposed to refuse to renew the license. Petitioners requested a hearing which was held on May 20, 1976. Petitioners were not represented by counsel. The principal witnesses were the assistant director of licensing for OLCC, the mayor of Vernonia and one of the petitioners.

The assistant director of licensing explained the commission's reasoning in proposing to deny the license.

"* * * [T]he Commission cannot unilaterally impose this restriction as recommended by the City of Vernonia without giving Mr. Morishige full due process rights. So we had to view it as a refusal. * * *

"* * * * *

"Q. * * * [C]an the Commission legally, to your knowledge, back up, change the license, and place restrictions on it after being issued on those pretenses?

"A. Not without, I think, a display of some pretty cogent reasons for the imposition of those restrictions, and then only upon a hearing such as this hearing today—upon a showing of need, therefore, in my view. It can't just arbitrarily say you are going to have this license renewed on terms that we are going to lay down for you, and thus this procedure."

On cross examination by the city's attorney the assistant director stated that the city had not advised OLCC that it desired restrictions on petitioners' original license in 1975. He went on to testify that if the commission had been advised of the desired restriction at that time, the commission would have issued the original license subject to the requested restrictions or issued a restaurant license pursuant to ORS 471.250. According to his testimony, it is common practice for the OLCC to place restrictions similar in nature to that requested on beer and wine licenses.

The mayor testified that the city council had endorsed the original license application relying on petitioner's stated intentions that beer and wine would be served only with meals, but that the council had mistakenly not requested any restrictions in endorsing the license application. At petitioners' invitation to the city council to inspect the premises, the mayor had visited the premises on two occasions for approximately 30 seconds each and observed persons who were drinking but not eating. Petitioners had advised the city council that they had had a change in plans since the initial license was issued, and for business reasons were now operating more of a tavern than a restaurant.

Petitioner's testimony was principally objections to any restriction in renewing his license. He did state that he originally intended to operate a restaurant only, but due to eight other new restaurants in town, he had to subsequently change the nature of his business.

The hearings examiner concluded that the facts set forth in the commission's letter, i.e., that the city requested a restriction on the renewed license, had been established by the weight of the evidence and recommended that the license either be refused or issued subject to the requested restrictions.

The OLCC then issued its findings of fact, conclusions of law, and order. The first portion of this document is labeled "findings of fact" but apparently was intended only as a summary of the evidence.[2] The

---

[2]The portion labeled "Findings of Fact" in the most part reads as findings of fact, except the final sentence which states:

"* * * Russel Vineyard, Minister, representing the Vernonia Ministerial Association (comprised of five churches) observed that he had seen minors sitting around a table on the premises with beer and wine on the table."

Vineyard testified:

"* * * [W]e walked into the restaurant and saw minors under 18, 15 year olds in one case that I know of, sitting around a table with

pertinent portions of the remainder of this document read:

## "ULTIMATE FINDINGS OF FACT

"1. The licensee served beer and wine without meals which was contrary to license representations in obtaining the City Council's initial endorsement of license application for Retail Malt Beverage license on February 17, 1975.

"2. City Council of City of Vernonia refused to endorse license renewal application for year 1976-77.

"From the foregoing Findings of Fact, the following Conclusion of Law is entered:

## "CONCLUSION OF LAW

"1. The City of Vernonia City Council refused to endorse license renewal application (OAR Chapter 845 10-715(2)).

## "ULTIMATE CONCLUSION OF LAW

"1. The Common Council of the City of Vernonia

---

adults, not their parents—22 year old fellows, etc.—with glasses of beer and apple juice and whatever else sitting on the table, and no responsible adult supervision; the owner back in the kitchen, and so on. And we're totally opposed to this kind of situation."

On oral argument, the assistant attorney general stated that the reference to the minister's testimony in the "Findings of Fact" is not a finding and concedes that there was no substantial evidence that petitioners had illegally sold alcoholic beverages to minors. The hearings examiner refers to the minister's testimony and the rebuttal testimony of petitioners and concludes "Licensee * * * convincingly expressed the opinion that 'we would have done nothing that is not legal.' " The commission's "Findings of Fact" make no reference to the rebuttal testimony leaving the inference that the Commission did not believe petitioner and may have relied on this "finding of fact" in reaching its decision.

Following the "Findings of Fact," the document recites the "Ultimate Findings of Fact" quoted in the opinion but makes no reference to the ultimate finding of fact number 1 in its "Conclusion of Law" and "Ultimate Conclusion of Law." The assistant attorney general argues that ultimate finding number 1 was part of the basis for the commission's decision. Thus, on one hand the Attorney General asks that we ignore what is labeled as a "finding of fact" but is not an "ultimate finding of fact," but asks us to take cognizance of an "ultimate finding of fact" which has no relevance to the "ultimate conclusion of law." We have done so in this case only because there is no substantial evidence to support either the ultimate findings of fact or conclusions of law. Our task, however, is to review the findings of fact and conclusions of law of the commission, not counsel's interpretation thereof.

[ 656 ]

refused to endorse license renewal application for Retail Malt Beverage license (ORS 471.210(2))."

It is not clear from the order what relevance the commission intended ultimate finding of fact number 1 have in reaching its ultimate conclusion of law. However, the state's brief indicates that the commission concluded that petitioners had either made a misrepresentation to or had acted in bad faith towards the city council and that this was one of the reasons for the denial of the renewal.[3] It is questionable whether the commission would be justified in relying on such a finding, and the finding is not supported by substantial evidence. The grounds for denying a license are set forth in ORS 471.295 and OLCC Regulations, OAR 845-10-700 to 845-10-725. Both make misrepresentation to the commission grounds for refusal, but make no provision for misrepresentations to others. A misrepresentation by an applicant to persons other than OLCC may constitute evidence that the applicant is not of "good repute and moral character" which is a ground for refusal under ORS 471.295(4)(f). However it does not constitute such evidence in this case. There is no evidence that petitioners' statement of intent to the city council in 1975 was untruthful. The only evidence is that petitioners subsequently changed their mode of doing business. The only evidence of the relationship between the city and petitioners is the mayor's testimony. He declined any suggestion that petitioners were untruthful or had acted in bad faith. Rather, he states that "* * * it was merely a mistake that we did not put a restriction on the license." The only reasonable inference from the mayor's testimony

---

[3]The state's brief states:

"The Commission considered the City Council's objections, particularly the Council's desire that the license be used for service with meals. The Commission further considered the petitioners' representations to the Council that the establishment would be operated in a particular manner. The Commission consequently did not deny on the sole grounds of the negative recommendation but took into consideration the petitioners' relationship with the City Council in coming to the determination that the renewal was not within the public convenience and necessity as provided by ORS 471.295(1)."

is that he believed that because of the city's mistake in making an unqualified endorsement of the 1975 application that the petitioners rightfully assumed they were free to operate their business in any manner permitted by the license. At the conclusion of his testimony the mayor stated:

"Q.  [By Petitioner] Do you feel that—or does the City feel that we have not lived up to any regulations or laws pertaining to a restaurant, and the Health Code, the Liquor Commission, licenses.

"A.  As far as the City is concerned, I am not aware of any outstanding complaints against you, Preston, [Petitioner] on any violation of laws or ordinances.

"Mr. Goodale: Do you have any further questions at the moment? * * * Do you have any further information you wish to present, Mr. Mayor?

"Mr. Holce [Mayor]: Well, if I could just make one statement that on our meeting at March 15, when we did deny the license and then turn around and recommended approval of a license with restriction that beer and wine be served with meals only, it was the City's way—it was what we originally intended to do back in February of 1975 is to grant a license with the restrictions. But, like I say, we were ignorant and didn't carry it through the way we meant for it to be."

There is likewise no substantial evidence to support ultimate finding of fact number 2 or the conclusion of law that the city council refused to endorse the license renewal.[4] If there was any ambiguity in the city's

---

[4]The commission labels the city's purported refusal to endorse as a finding of fact and conclusion of law presumably on the assumption that a negative recommendation of the city, alone, is sufficient grounds for denial. There is no evidence indicating the city's reasons for recommending either the requested restrictions or denial of the license renewal. ORS 471.210(2) provides that OLCC may take recommendations of a city "into consideration before granting or denying the license." OAR 845-10-715(2) states as one of the community criteria in considering license applications:

"A recommendation based on adequate consideration and justification by the local unit of government having jurisdiction of the subject outlet."

We do not reach the question whether the commission may deny a license solely on the ground of a negative recommendation by the city, particularly where that recommendation is unsupported by any findings or reasons.

letter to the commission, the mayor's testimony was unequivocal that the city was endorsing the renewal provided the license was restricted in the manner requested. It recommended denial if the commission could not impose such restriction. The commission's own witness testified that such restrictions are common.

Reversed and remanded for further proceedings.

**SCHWAB, C. J.,** specially concurring.

The majority opinion reverses and remands on the ground that the Commission was in error in stating that it could not grant a license with the restriction desired by the city and cites as its only authority the fact that the Commission's own witness testified that such restrictions are common. Assuming for the purpose of argument that the statutory grant of authority to the Commission gave it this power, I have not seen evidence of any regulations of the Commission giving it the basis for exercising it. In any event I do not think it necessary to reach the question in order to reverse the Commission's order and remand the matter for further proceedings.

The Commission's order denies the renewal of petitioner's license on two grounds: (1) petitioner had misrepresented and (2) the city refused to endorse the application for renewal. As the majority opinion points out, the first ground is unsupported by any evidence. It follows that the Commission's refusal to renew the license was solely on the basis that the city had so recommended. The city's letter gave no reason for its position. The Commission's power to consider and give weight to the recommendations of the city does not authorize the Commission to make an unqualified delegation of its licensing power to the city. To act solely on the basis of an unreasoned recommendation is, in effect, to so do.